**Gregory C. KRUG, Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 98–5130.

United States Court of Appeals,
Federal Circuit.

Feb. 17, 1999.

Gregory C. Krug, pro se, of Costa Mesa, California.

Kenneth W. Rosenberg, Attorney, Tax Division, U.S. Department of Justice, of Washington, for defendant-appellee. With him on the brief were Loretta C. Argrett, Assistant Attorney General, Gary R. Allen, Attorney, and Jonathan S. Cohen, Attorney. Of counsel was Curtis C. Pett, Attorney.

Before PLAGER, RADER, and BRYSON, Circuit Judges.

PLAGER, Circuit Judge.

In this case, Gregory C. Krug, appealing *pro se*, claims a right to have a reward from the United States for information he gave the Internal Revenue Service ("IRS") regarding third-party taxpayers, information that the Government admits led to a recovery of millions of dollars in unpaid taxes. The IRS declined to make him a reward, and he sued.

In its April 30, 1998 decision, the Court of Federal Claims granted the Government's motion for summary judgment. *See Krug v. United States*, 41 Fed. Cl. 96 (1998). The court concluded that Mr. Krug was not contractually entitled to a reward for providing the IRS with information about alleged underpayments of income and gift taxes by the third-party taxpayers. The court also deter-mined that the IRS did not abuse its discretion in denying Mr. Krug a reward. Because we conclude that the Court of Federal Claims correctly read the law, we affirm.

## DISCUSSION

■ We have jurisdiction to hear this appeal under 28 U.S.C. § 1295(a)(3) (1994). Whether the Court of Federal Claims properly granted summary judgment is a question of law over which we exercise plenary review. *See Applegate v. United States*, 25 F.3d 1579, 1581 (Fed.Cir.1994).

■ The crux of Mr. Krug's argument on appeal is that IRS Publication 733 in its current incarnation, and unlike its predecessors, creates an implied-in-fact contract obligating the Government to pay Mr. Krug for the information that he provided. Mr. Krug acknowledges that our precedents establish that 26 U.S.C. § 7623 and its implementing regulation, 26 C.F.R. § 301.7623–1(a), alone do not contractually bind the Government. *See, e.g., Merrick v. United States*, 846 F.2d 725, 726 (Fed.Cir.1988). The *Merrick* court characterized § 7623 and its accompanying regulation as "an indefinite reward offer that an informant may respond to by his conduct," as distinguished from an "enforceable contract [that] arises when the parties fix the reward amount." *See id.* at 726.

Mr. Krug further acknowledges that, prior to 1980, Publication 733, the publication issued by the IRS which describes the Government's policy regarding informant's rewards, did not alone or in conjunction with the statute and the regulation create an enforceable contract. He distinguishes his situation from every other informant's case on the grounds that he relied on the post–1980 version of Publication 733 when he submitted the information which led to the investigations which led to the Government's recovery of the unpaid taxes.

Prior to its revision in July 1980, IRS Publication 733 (rev.3–77) read in relevant part:

The District Director will determine whether a reward will be paid, and its amount. In making this decision, the in-

formation you provided will be evaluated in relation to the facts developed by the resulting investigation.

The Publication went on to explain that the reward will not exceed ten percent of the recovery, with a $50,000 cap.[1]

After its revision in 1980, Publication 733 again begins with the first and second sentences quoted above. Then, however, the Publication states that: "Claims for reward will be paid in proportion to the value of information you furnished.... The amount of the award will be determined as follows...." Thereafter, several paragraphs describe the formulae that will be applied to recoveries depending on the nature of the information supplied.[2]

The trial judge considered that the opening two sentences, unchanged by the 1980 revision, continued the operative legal effect of the pre–1980 law. That is, 26 U.S.C. § 7623 and its implementing regulation, along with the explanatory Publication 733 in its current version, still does no more than *Merrick* described: it floats an indefinite reward offer that an informant may respond to by conduct, but a binding contract does not arise until the Government brings the offer to ground by a specific award.

Mr. Krug argues that by setting forth in the post–1980 version of Publication 733 the detailed formulae by which awards will be calculated, the IRS intended to take from itself the discretion to deny an award whenever an informant's factual situation falls within one of the formulae.[3] The difficulty with that argument, of course, is that the agency's conduct is directly contrary to such a supposed intent. Furthermore, if the agency intended such a significant change in the law, and in light of our precedents and the IRS's historical insistence that it had the discretion to deny a reward such a change would be significant, the appropriate place to announce it would have been through a change in the governing regulation, and not through an instructional publication.[4]

We think the trial court is correct. The unchanged opening sentences of Publication 733 along with the more detailed explanation of the formulae for reward suggest that the revision was not intended to bring about a sea-change in the Government's practice, but rather to disclose (and guide) more fully the bases on which rewards would be made, with the hope of encouraging more persons to become informants.[5] Recasting the *Merrick* analysis may help make the point. In the more usual language of contract, it can be said that, in Publication 733 and pursuant to § 7623 and the regulation, the Government *invites* offers for a reward; the informant *makes* an offer by his conduct; and the Government *accepts* the offer by agreeing to pay a specific sum. When accepted, the amount of the reward is determined in accor-

---

1. The exact language of the publication states that "[t]he reward will not exceed 10 percent of the additional taxes, penalties, and fines collected, with the total reward not exceeding $50,000." IRS Publication 733 (rev.3–77).

2. The specific paragraphs read:
   1) For specific and responsible information that caused the investigation and resulted in recovery, the reward will be 10 percent of the first $75,000 recovered, 5 percent of the next $25,000, and 1 percent of any additional recovery. The total reward will not be more than $50,000.
   2) For information that caused the examination and was of value in determining tax due, although not specific, and for information that was a direct factor in recovering tax, the reward will be 5 percent of the first $75,000 recovered. 2½ percent of the next $25,000, and ½ percent of any additional recovery. The total reward will not be more than $50,000.

   3) For information that cause the investigation but was of no value in determining tax due, the reward will be one percent of the first $75,000 recovered and ½ percent of any additional recovery. The total reward will not be more than $50,000.
   IRS Publication 733 (rev.7–80).

3. Mr. Krug claims the benefit of the 1990 version of Publication 733. The 1990 version is the same as the 1980 version, with the exception that the cap has been raised to $100,000. *See* IRS Publication 733 (rev.11–90).

4. Since we reject Mr. Krug's reading, we need not address the question whether the statute authorizes the agency, even if it so wished, to forego the exercise of discretion in making rewards.

5. Whether cases like this will encourage or dissuade future informants is not for us to say.

dance with the formulae. So analyzed, it can readily be seen that the change in the formulation of Publication 733 does not carry with it the significance that Mr. Krug would attach to it. Furthermore, *Merrick* was decided in 1988, and dealt with a fact situation that arose in 1982. The *Merrick* court made specific reference to the 1980 version of Publication 733. *See* 846 F.2d at 725–26 (summarizing the reward calculation language). The Court of Federal Claims did not err in finding that no implied-in-fact contract exists to support Mr. Krug's claim for a reward.

Mr. Krug further contends that the IRS's refusal to make an award was an abuse of discretion. As this court's predecessor noted, "the District Director has complete discretion ... to determine whether an award should be made...." *Saracena v. United States,* 206 Ct.Cl. 90, 508 F.2d 1333, 1336 (Ct.Cl.1975). The Court of Federal Claims determined that the IRS's reasons for denying Mr. Krug a reward were "not irrational" and that the lack of a reward, alone, fails to demonstrate an abuse of discretion. *Krug v. United States,* 41 Fed. Cl. 96, 98–99 (1998). Although it is an open question whether an agency's denial of a discretionary award is reviewable at all, *see* 5 U.S.C. § 701(a)(2) (1994) (excluding judicial review where "agency action is committed to agency discretion by law"), because the Court of Federal Claims upheld the agency's decision such review was at most harmless error.

We have considered the other legal arguments Mr. Krug raised in his brief and find them unpersuasive. Though Mr. Krug presents an appealing case, and the IRS's conduct, as described by the trial court, in dealing with Mr. Krug leaves much to be desired in terms of how the Government should treat its citizens, perhaps the only conclusion to be drawn from this case is that it may be wiser for an informant to discuss the reward before, rather than after, the information is given.

Be that as it may, the Court of Federal Claims did not err in granting summary judgment in favor of the Government.

## CONCLUSION

The judgment of the Court of Federal Claims is

*AFFIRMED.*